UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

STEVEN J. HAYES,                    :
          Plaintiff,               :
                                   :
     v.                            :     Civil No. 3:14-cv-1203 (AWT)
                                   :
ANTHONY BRUNO, et al.,             :
          Defendants.              :


RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [Doc. #72]
AND PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION [Doc. #91]

     Plaintiff Steven Hayes commenced this action by complaint

against defendants Anthony Bruno, Edward Maldonado, Angel Quiros,

Karl Lewis, Monica Rinaldi and Michael Bibens.  He alleges that the

defendants have denied him a kosher diet in violation of his

religious beliefs.  He asserts claims under the First and Eighth

Amendments and the Religious Land Use and Institutionalized Persons

Act ("RLUIPA"), 42 U.S.C. § 2000cc, et seq.  The defendants have

moved for summary judgment.  For the reasons that follow, the

defendants' motion is being granted.

I.   Legal Standard

     A motion for summary judgment may be granted only where there

are no issues of material fact in dispute and the moving party is

therefore entitled to judgment as a matter of law.  Rule 56(a), Fed. R. Civ. P.; In re Dana Corp., 574 F.3d 129, 151 (2d Cir. 2009).  The moving party may satisfy his burden "by showing—that is pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."  PepsiCo, Inc. v. Coca-Cola Co., 315 F.3d 101, 105 (2d Cir. 2002) (per curiam) (internal quotation marks and citations omitted). Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial.  Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).  He must present such evidence as would allow a jury to find in his favor in order to defeat the motion for summary judgment. Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

The nonmoving party "must offer some hard evidence showing that its version is not wholly fanciful." D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998).  In addition, where the parties offer contradictory versions of the facts, one of which is "blatantly contradicted by the record," the court should not adopt the unsupported version when ruling on a motion for summary judgment. Scott v. Harris, 550 U.S. 372, 380 (2007).

II.  Factual Background[1]

The plaintiff is confined at Northern Correctional Institution. Rabbi Robert Schectman is an ordained rabbi.  He was employed as a Jewish Chaplain by the Department of Correction for over fourteen years, until he retired on May 1, 2013.  His duties included providing religious services to Jewish inmates and consulting with the Director of Religious Services on Jewish religious issues, such as kosher dietary requirements.  Rabbi Schectman also consulted with and advised the Director of Food Services regarding kosher requirements for foods and food products.  Rabbi Schectman personally observes kosher dietary laws and has provided affidavits to the court on this subject on prior occasions.  Rabbi Schectman has spoken with the plaintiff on numerous occasions during the plaintiff's incarceration.

Rabbi Schectman is familiar with the Common Fare meal program. He developed the program in conjunction with the Islamic chaplains and expert dietary officials.  He was responsible for on-going compliance and monitoring issues relating to the Common Fare menu for over thirteen years.  Periodically, Rabbi Schectman visited the production kitchen at York Correctional Institution and the kitchens

---

[1] The defendants include in their Local Rule 56(a)1 Statement facts relating to a soy allergy, medical treatment, a March 10, 2014 suicide attempt and mental health treatment.  As the plaintiff states these facts do not relate to issues being litigated in this case, the facts are not included here.

in other correctional facilities.  He inspected the kitchens and reviewed policies and procedures, food labels and kitchen operations. He also conferred with correctional food service supervisors and the Islamic expert who accompanied him on site visits.

All of the foods included on the Common Fare menu may be eaten by kosher inmates.  Rabbi Schectman's duties included on-going monitoring for compliance with kosher dietary requirements.  He is familiar with the requirements to maintain a kosher kitchen, including the requirement that all kosher items be kept separate and apart from non-kosher items.  This separation extends to storage, handling, preparation and service.  Rabbi Schectman has worked with the former and current Directors of Food Services regarding production of Common Fare meals.  After reviewing the Common Fare menu and production kitchen, Rabbi Schectman advised Father Bruno, the Director of Religious Services, and the two Directors of Food Service, that the Common Fare menu, as produced in the Connecticut Department of Correction kitchens conforms to kosher requirements. Rabbi Schectman states that, in his opinion, to a reasonable degree of professional certainty the Common Fare meals provided to kosher inmates are prepared in a manner that maintains adequate separation of food groups and are in compliance with kosher dietary requirements.

4

Rabbi Praver, an ordained rabbi, is the current Jewish Chaplain for the Department of Correction.  He assumed this position in October 2013.  He provides religious services to Jewish inmates and consults with the Director of Religious Services on Jewish religious issues, including kosher dietary requirements.  He also consults with the Director of Food Services regarding kosher requirements for foods and food production.

Rabbi Praver personally observes Jewish kosher dietary law.  He is familiar with the Common Fare program, has inspected the production kitchen at York Correctional Institution, and has reviewed the procedures, menus and food labels on all items in the Common Fare program.  On May 19, 2015, Rabbi Praver inspected the kitchen at Northern Correctional Institution and observed the food preparation and assembly of the individual meals that would be delivered to inmates at Northern Correctional Institution in individual styrofoam trays.  He viewed the separate Common Fare food preparation area and the separate Common Fare refrigerator.  He also inspected food labels, including the label for the kosher cheese used in the cheese sandwiches provided on the Common Fare menu.

Rabbi Praver observed that the dedicated Common Fare food production area has stainless steel surfaces.  The pots and pans used to prepare Common Fare meals are all stainless steel as well.  This area is separate from the Master menu food preparation area.  The

area is sterilized and washed with powerful chemicals prior to any food preparation.  Rabbi Praver observed and confirmed that all Common Fare items were kept separate from items used in preparing food for the Master menu.  The Common Fare trays were prepared first, placed in closed styrofoam containers and placed on the top shelves of the food serving carts to prevent contamination from food in the regular trays.  The inmates working in the kitchen are properly trained in the need to keep Common Fare separate.

As part of his duties, Rabbi Praver monitors issues regarding the Common Fare menu and ensures compliance with all requirements as requested by the Director of Food Services.  Periodically, Rabbi Praver inspects the production kitchens at York Correctional Institution to monitor the administration of the Common Fare policies, procedures and operations.  He conducts these inspections on a random and unannounced basis to ensure compliance with Jewish dietary requirements.  This level of supervision, called Hashgacha yotzei V'niknas, is an acceptable level of supervision of kosher food establishments, including jails and prisons.  All rabbis working in the Department of Correction are authorized to supervise the kitchen in any correctional facility in which they are working on a random basis without prior notice.

In Rabbi Praver's opinion, the food served on the Common Fare menu is acceptable for inmates seeking to maintain a kosher diet in

accordance with Jewish dietary law.[2]  Rabbi Praver has inspected the
food labels and food products used for Common Fare meals.  He has
consulted with the Chief of Food Services and ensured that the foods
used complied with kosher dietary requirements.

Rabbi Praver avers that the requirement for tevila, or
immersion, of kitchen vessels only applies to items owned by Jewish
persons.  As the Department of Correction is not a person of Jewish
faith, the requirement does not apply.  He has seen and approved the
sanitization process used in the Northern Correctional Institution
kitchen as acceptable for kosher food preparation.

Defendant Michael Bibens is the Chief of Food Services for the
Department of Correction.  He has held that position since 2007.  The
plaintiff receives regular food trays instead of choosing to eat the
kosher foods on the Common Fare menu.  For example, on May 19, 2015,
the plaintiff chose to eat the regular menu for lunch.  The meal
included chicken hot dogs, vegetarian baked beans, sauerkraut, two
slices of bread, mustard and milk.  The Common Fare alternative did
not include meat.  Instead it included cheese sandwiches made with
kosher cheese.  The Common Fare menu does not include meat.  Protein
is provided by fish, cheese and other items.  The Common Fare menu is

---

[2] The plaintiff states that Rabbi Praver admitted to him that the
Common Fare meals are not permissible for strict Orthodox Kosher followers.
This statement is hearsay and not admissible to oppose a motion for summary
judgment.

nutritionally equivalent to the regular menu and contains only kosher items.  Although Rabbi Praver has reviewed all Common Fare food items and determined that they are acceptable for inmates choosing to eat kosher meals, the plaintiff has elected to receive the regular menu which includes items that are not kosher.

As recently as May 2015, the kitchen at Northern Correctional Institution was inspected and monitored to ensure there is no cross-contamination.  The plaintiff has never been in the kitchen at Northern Correctional Institution and has no personal knowledge to support his allegations of cross-contamination in the kitchen. Common Fare meals are prepared first.  The preparation is in a separate area of the kitchen and uses separate pots, pans and utensils.  Only after the Common Fare meals are prepared, placed in individual styrofoam containers, sealed and placed on the top levels of the food service cart does preparation of the regular meals commence.  Kosher-certified food items are stored in a separate locked refrigerator.

The Department of Correction provides about 50,000 inmate meals each day.  Defendant Bibens states that it would be cost-prohibitive to provide individualized kosher meals uniquely designed by each inmate seeking one.  There would be an infinite variety of meals requested.  The process would create administrative burdens with an increased probability of confusion.  Such a procedure would prevent

the Department of Correction from providing reliable and simplified food service in a cost-effective manner.  Mix-ups in meals also could impact institutional security.

Robert DeVeau is a licensed Registered Dietician.  Before his retirement in 2009, he served as the Chief of Food Services for the Department of Correction.  Mr. DeVeau has analyzed the nutritional adequacy of the regular and Common Fare menus using the standards from the American Correctional Association, American Dietetic Association and USDA Dietary Guidelines.  Both menus comply with these standards.

All inmate workers assisting in food preparation and assembly of food trays are trained prior to beginning work in the kitchens.  They must know and comply with the Common Fare policies and procedures.  The inmates are continuously supervised by correctional food services supervisors for quality assurance and monitoring.  The Northern Correctional Institution kitchen has passed all monthly audits to ensure compliance with the complete separation requirement and other procedures for production and administration of the Common Fare meals.

Defendant Reverend Anthony Bruno is the Director of Religious Services for the Department of Correction.  He has held this position since 1999.  Reverend Bruno has no duties or responsibilities regarding approval of meals for inmates.  Any questions regarding

whether food items or methods of preparation meet religious requirements are referred to the Jewish or Islamic Chaplains.

Defendants Warden Maldonado and District Administrator Quiros have no responsibility in approving inmate meals.  They are not involved in creating, implementing or administering the regular menu program or the Common Fare menu program.

III. <u>Discussion</u>

The defendants assert several grounds in support of their motion for summary judgment:  (1) all claims for damages against the defendants in their official capacities are barred by the Eleventh Amendment; (2) the defendants are protected against all claims for damages against them in their individual capacities by qualified immunity; (3) the plaintiff's First Amendment right to free exercise of religion has not been violated; (4) the plaintiff's rights under RLUIPA have not been violated; (5) the Common Fare diet does not violate the plaintiff's Eighth Amendment rights; (6) defendants Bruno, Maldonado and Quiros were not personally involved in the development or provision of Common Fare meals; and (7) the amended complaint was not served on defendants Rinaldi, Lewis and Bibens.

A.   <u>Damages Claims</u>

In their first two grounds, the defendants argue that all claims against them in their official capacities for damages are barred by the Eleventh Amendment and that they are protected by qualified

immunity for any claims for damages against them in their individual capacities.  The court granted the defendants' motion to dismiss on these grounds.  See Doc. #79.  Although the motion to dismiss was filed only by defendants Bruno, Maldonado and Quiros, the rationale applies equally to all of the defendants.  Accordingly, any remaining claims for damages are dismissed for the reasons stated in the prior ruling.

B.   First Amendment Claims

The plaintiff argues that the defendants have violated his First Amendment right to freely exercise his religion by failing to provide kosher meals consistent with his Orthodox Jewish beliefs.

The First Amendment precludes judicial review of claims that require "a searching … inquiry into church [doctrine]" and prohibits the courts from deciding "religious dispute[s,] the resolution of which … is for ecclesiastical and not civil tribunals."  Serbian E. Orthodox Diocese v. Milivojevich, 426 U.S. 696, 709 (1976).  The federal court may decide a secular issue relating to a religious entity, but only if the court is not required to inquire "into religious law and polity."  Kavanagh v. Zwilling, 997 F. Supp. 2d 241, 249-50 (S.D.N.Y. 2014)(citations and internal quotation marks omitted).  In this case, the plaintiff challenges meal preparation in prison as failing to conform to Orthodox Jewish law.

11

As discussed below, the defendants have provided affidavits from two rabbis stating that the Common Fare meal preparation process complies with Jewish dietary law.  The plaintiff has provided copies of email messages from December 2011 through January 2012 dealing with purchase of countertop convection ovens to prepare kosher food.  See Doc. #102-1 at 19-22.  Page 20 reflects concerns about an unidentified inmate expressed by an unidentified person who does not appear to be a Department of Correction employee.  The writer states that kosher food must be cooked in a kosher kitchen or a new microwave that is used only for kosher food items and that, "according to Jewish law, food cannot be considered kosher if it is cooked in a non kosher kitchen (even if the cook promises that he cleaned and boiled the pots)."  The writer goes on to describe other sources of kosher food and asks if purchase would be possible or, if not, whether the Department would accept a donation from "us" and volunteers to work with the head of food service and the rabbi.  Doc. #102-1 at 20.  This statement appears to be page 3 of an email stream.  The plaintiff acknowledges that he received a document marked page 1 in discovery,[3] but no page 2.  Doc. #102-1 at 17.

_____

[3] The production request in response to which this document was provided sought information on appliances, pots, pans and utensils used for kosher food preparation.  Doc. #102-1 at 14, request #2.  Presumably, page 2 of the email stream was not provided because it contained no reference to appliances, pots, pans or utensils.

The plaintiff does not indicate that he made any effort to obtain the missing page or identify the writer.  The record reflects that he did not seek the page through a motion to compel.  There is no basis to determine whether the quoted statement is an official interpretation of Jewish law or merely the writer's opinion.  Without additional information, this email page is insufficient to place Jewish law into question.  If it were, this court would be barred by the First Amendment from deciding the claim as it would require the court to determine what Jewish dietary law requires.

Under the First Amendment, the courts apply a reasonableness standard when assessing whether the conduct of prison officials impermissibly infringes upon an inmate's free exercise of religion.  O'Lone v. Estate of Shabazz, 482 U.S. 342, 353 (1987).  "'[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.'"  Id. at 349 (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)).

The Free Exercise Clause applies to a prisoner's sincerely held religious belief.  Ford v. McGinnis, 352 F.3d 582, 590 (2d Cir. 2003).  The defendants do not challenge the sincerity of the plaintiff's desire to eat only kosher meals.

The Second Circuit has not determined whether "'a prisoner must show at the threshold that the disputed conduct substantially burdens

13

his sincerely held religious beliefs'" to assert a First Amendment claim.  Holland v. Goord, 758 F.3d 215, 220 (2d Cir. 2014) (quoting Salahuddin v. Goord, 467 F.3d 263, 274-75 (2d Cir. 2006)).  Other courts within this circuit have noted that the Second Circuit has applied this standard without specifically adopting it.  Thus, they follow suit and will continue to apply the substantial burden test until the Second Circuit holds otherwise.  See Hamilton v. Countant, 2016 WL 881126, at *3 (S.D.N.Y. Mar. 1, 2016)(citing cases).  This court will follow that approach.

The Second Circuit has defined "a substantial burden as a situation where 'the state puts substantial pressure on an adherent to modify his behavior and violate his beliefs,'" as distinguished from imposing "inconveniences so trivial that they are most properly ignored."  McEachin v. McGuinnis, 357 F.3d 197, 202-03 n.4, 6 (2d Cir. 2004) (quoting Jolly v. Coughlin, 76 F.3d 468, 477 (2d Cir. 1996)).  In making the distinction, the Second Circuit cautions the district courts to "'resist the dangerous temptation to try to judge the significance of particular devotional obligations to an observant practitioner of faith.'"  Id. at 201 (quoting Hernandez v. Comm'r, 490 U.S. 680, 699 (1989)).

The court considers "whether the challenged regulation or official action has a valid, rational connection to a legitimate governmental objective; whether prisoners have alternative means of

14

exercising the burdened right; the impact on guards, inmates, and prison resources of accommodating the right; and the existence of alternative means of facilitating exercise of the right that have only a de minimis adverse effect on valid penological interests." Holland, 758 F.3d at 222-23(quoting Salhauddin, 467 F.3d at 274).

In support of their motion for summary judgment, the defendants have provided affidavits of two rabbis stating that the Common Fare meals are prepared in accordance with kosher law. In addition, they have provided affidavits supporting their position that accommodating kosher requirements through the Common Fare menu, rather than individualized kosher meals as the plaintiff would prefer, reduces costs and increases administrative efficiency. The Common Fare menu also promotes safety and security by avoiding institutional unrest over perceived special treatment for some inmates and possible altercations if meals are not delivered to the proper persons.

In opposition, the plaintiff fails to provide any admissible evidence showing that the Common Fare meals are not prepared in accordance with Jewish law. He provides no affidavit from a rabbi certifying that the process used is not kosher. In addition, the plaintiff has never been in the institutional kitchen and has no personal knowledge of the preparation, storage and serving processes.

The plaintiff has submitted documentation showing that he requested that video footage of food preparation and service be

15

preserved.  Pl.'s Mem. Attachment A, Ex. 16, Doc. #102-2 at 40-43.
He has not submitted that footage in opposition to the defendants'
motion for summary judgment or indicated that he requested the
recording through the discovery process.  The response from
correctional officials noting that the requested footage had been
preserved states that the plaintiff would need a court order to view
the footage.  See Pl.'s Mem. Attachment A, Ex. 16, Doc. #102-2 at 51-
43.  The docket in this case shows that the plaintiff never requested
such an order.  Thus, the plaintiff has not viewed any of the footage
and has no knowledge of what is depicted.  The plaintiff's summary of
the contents of the video recordings, which he has not viewed, is not
admissible evidence and a document showing that the recordings were
preserved does not show the contents of the recordings.  Thus, there
is no admissive evidence of video recordings that may be considered
on a motion for summary judgment.

    In the criminal/habeas context, the Supreme Court has observed
that the trial court has no duty to provide assistance to pro se
defendants in conducting their cases.  See, e.g., Martinez v. Court
of Appeal of Cal., Fourth Appellate Dist., 528 U.S. 152, 162 (2000)
("[T]he trial judge is under no duty to provide personal instruction
on courtroom procedure or to perform any legal 'chores' for the
defendant that counsel would normally carry out"); McKaskle v.
Wiggins, 465 U.S. 168, 183-84 (1984) ("[a] defendant does not have a

16

constitutional right to receive personal instruction from the trial judge on courtroom procedure"; "the Constitution [does not] require judges to take over chores for a pro se defendant that would normally be attended to by trained counsel as a matter of course").  Other districts have applied this guidance to procedural errors in civil cases.  See Durham v. City of Clarksville, Tenn., 2014 WL 3895229, at *4 (M.D. Tenn. Aug. 8, 2014) (granting motion to dismiss and dismissing case with prejudice where plaintiff served process himself in violation of Rule 4(c)(2)); Beaudoin v. White, 2010 WL 623646, at *3 (E.D. Mich., Feb. 18, 2010) (court had no obligation to seek clarification from pro se litigant after receiving ambiguous ex parte notice to determine whether litigant planned to amend complaint before granting motion to dismiss); Hardge v. Epps, 2007 WL 2454059, at *4 (S.D. Miss. July 26, 2007) (court not required to guide pro se litigant through process of obtaining expert witness to oppose motion for summary judgment).

    In this case, the plaintiff received a Notice to Pro Se Litigant explaining the requirements to oppose a motion for summary judgment along with copies of Federal Rule of Civil Procedure 56 and D. Conn. Local Civil Rule 56.  See Doc. #72-21.  Thus, he was aware of the requirement that he support his responses to the statements in the Local Rule 56(a)1 Statement with citations to admissible evidence but has not done so.

17

The plaintiff relies heavily on his interpretation of excerpts from the Torah and other religious texts.  He provides no evidence showing that the Department of Correction practices do not conform to the religious requirements.  The plaintiff also cites three cases for the proposition that hot kosher food cannot be served from a standard professional kitchen.  These cases do not support his claim.

In <u>Beerheide v. Sutton</u>, 286 F.3d 1179 (10th Cir. 2002), the issue was whether correctional staff could charge inmates 25% of the cost of providing kosher meals.  The court did not consider the organization of the prison kitchens and the food preparation process.  The court noted only:  "Kosher laws govern not only the ingredients (both animal and vegetable) but the source, storage, and preparation of those ingredients and the service of meals.  A vegetarian meal prepared in a non-kosher kitchen is not kosher." and "Under Orthodox kashruth law, a person either keeps kosher or he does not."  Id. at 1187.

In <u>Ashelman v. Wawrzaszek</u>, 111 F.3d 674 (9th Cir. 1997), the court considered whether the prison provided a kosher diet.  Arizona inmates were served one frozen TV-dinner-style kosher meal per day and were required to choose from vegetarian and nonpork alternatives, which were not kosher, for other meals.  The court of appeals opinion states that the district court found that kosher meals could not be prepared in standard prison kitchens but does not describe the

evidence relied upon by the district court in reaching this conclusion.   The district court decision is not reported.

Finally, the plaintiff cites Rich v. Secretary, Fla. Dep't of Corrections, 716 F.3d 525 (11th Cir. 2013).   There the court considered a RLUIPA claim for failure to provide a strictly kosher diet.   During the time the action was pending, Florida had no plan to provide kosher meals.   Inmates were required to choose among the regular menu, a non-meat substitute and a vegan meal.   From 2004-2007, Florida previously had a kosher dietary program with several separate kosher kitchens around the state to provide kosher meals to inmates who met certain requirements.   The issue in the case was the requirement to offer kosher meals, not their preparation.

Thus, of the three cases, two do not deal with the preparation of kosher meals and the third provides no basis for a conclusion that the meals cannot be prepared in a standard prison kitchen.   There also is no basis to compare the kitchen in Arizona with the production kitchen at York Correctional Institution.   There are no facts in any of the cases tending to show that the procedures established by the Connecticut Department of Correction are insufficient to prepare kosher meals.

The plaintiff challenges the affidavit of Rabbi Schectman on the ground that Rabbi Schectman fails to identify the standard of kosher he follows, thereby implying the existence of several levels of

19

kosher with orthodox kosher as the highest. In support, the
plaintiff references a passage describing how some persons require
strict orthodox certification as to the meats and dairy products
consumed and others accept lesser certifications. This case,
however, is a challenge to the meal preparation process, not the
specific foods included in the meals. The plaintiff provides no
evidence that there are different levels of kosher food preparation
procedures, and one of the cases he relies upon clearly states that
there are not. See Beerheide, 286 F.3d at 1187 ("Under Orthodox
*kashruth* law, a person either keeps kosher or he does not." (external
citation omitted)).

Regarding Rabbi Schectman's statements that all aspects of the
food preparation process comply with Jewish dietary law, the
plaintiff contends that he did not specifically mention the washing
area where pots and pans become defiled. The plaintiff provides the
interrogatory responses of defendant Bibens stating that there are no
separate sinks for washing kosher pots and pans. Although defendant
Bibens concedes that he is not well-versed in all the details of
Jewish dietary law, he states that all procedures utilized in the
Department of Correction kitchens have been approved by the rabbi as
in compliance with Jewish dietary law. Doc. #102-2 at 15-16. The
plaintiff provides no admissible evidence that the procedures used
violate Jewish dietary law or that the procedures cause the pots and

20

pans to be defiled.  Further, although the plaintiff argues that
ritual cleanliness is different from physical cleanliness, he
provides no evidence showing that any items in the Department of
Correction kitchens are not ritually clean as well as physically
clean.

The plaintiff contends that the audits, performed by Rabbi
Schectman and Rabbi Praver, of the procedures used in Common Fare
food preparation are not the same as certification.  The information
he provides on the certification process, Pl.'s Mem. Attachment A,
Ex. 13, Doc. #102-2 at 25-28, applies to companies that manufacture
kosher products for sale.  The plaintiff provides no authority
applying this same process to institutional food service or
supporting his position that an audit performed by a rabbi is
insufficient to show that food preparation process complies with
Jewish dietary laws.

Finally, the plaintiff submits the affidavit of another death
row inmate, Richard Reynolds, to support his claim of cross-
contamination.  The original affidavit only describes the arrangement
of food in the Common Fare tray and does not provide any information
suggesting cross-contamination between Common Fare and regular meals.
Doc. #102-2 at 30-31.  Inmate Reynolds also submitted an amended
affidavit, Doc. #102-2 at 32-33, in which he attempted to correct
statements made in his original affidavit.  He states: (1) Common

Fare trays are not always placed on the top shelf of the food cart and claims that one of the preserved video recordings shows correctional officers searching the food cart for his Common Fare tray and the trays of the plaintiff and another inmate who received a Common Fare tray; (2) on June 1, 2015, and on other occasions, his Common Fare tray contained regular food; (3) both regular and Common Fare trays sometimes have broken lids so sauce or gravy can spill out of the tray -- although Reynolds provides no evidence that he ever received a common fare tray containing sauce or gravy from a regular tray; and (4) foods intended to be served cold and hot are not always kept separate as they would be in the dining hall.  However, neither the plaintiff nor Inmate Reynolds has viewed the video recording, so they have no knowledge of the specific area captured on the video recording or what activity is depicted.  Also, the plaintiff refuses to accept the Common Fare meals, his tray would not be with the Common Fare trays which are placed on the top levels--not just on the top level--of the serving cart.  In addition, any isolated incidents involving Reynolds do not tend to show that the plaintiff's rights were violated.  Finally, as to the third and fourth points, even if a violation could be inferred, the situations described do not tend to show that the entire Common Fare meal preparation process fails to comply with Jewish dietary law.

The plaintiff has presented no evidence showing that the Common Fare meal preparation process substantially burdens his sincerely held religious beliefs.  Also, the court takes judicial notice of the fact that the plaintiff has recently filed a new action in which he alleges that he cannot eat the foods on the Common Fare menu because many contain soy products to which he is allergic.  See Hayes v. Wright, No. 3:16cv377(AWT).  Thus, it appears that regardless of the preparation process used, the plaintiff would refuse to eat the Common Fare meals.

The plaintiff fails to meet his burden of demonstrating a genuine issue of material fact on his First Amendment claim.  Accordingly, the defendants' motion for summary judgment on this claim is being granted.

C.   RLUIPA Claims

The plaintiff contends that the food preparation process violated his rights under RLUIPA.  RLUIPA bars "the government from imposing a substantial burden on a prisoner's free exercise unless the challenged conduct or regulation 'further[s] a compelling government interest and [is] the least restrictive means of furthering that interest.'"  Holland, 758 F.3d at 224 (quoting Redd v. Wright, 597 F.3d 532, 536 (2d Cir. 2010)).

Again, the plaintiff is required to demonstrate that there exists a genuine issue of material fact as to a substantial burden on

23

his religious beliefs.  As discussed above, he has not done so.
Accordingly, defendants' motion for summary judgment is being granted
as to the RLUIPA claim.

> D.    Eighth Amendment Claims

The plaintiff also challenges the preparation of the Common Fare
meals as violating his rights under the Eighth Amendment.  To state
an Eighth Amendment claim relating to conditions of confinement, the
plaintiff must show that the alleged deprivation is sufficiently
serious and that prison officials acted with deliberate indifference
to his health and safety.  See Farmer v. Brennan, 511 U.S. 825, 834
(1994).  The Eighth Amendment requires that prisoners be provided
nutritionally adequate meals that are prepared and served under
conditions that do not present an immediate danger to their health
and well-being.  See Jones v. Smith, No. 9:09-cv-1058(GLS/ATB), 2015
WL 5750136, at *2 (N.D.N.Y. Sept. 30, 2015) (citing Robles v.
Coughlin, 725 F.3d 12, 15 (2d Cir. 1983)).

The defendants have presented evidence that the Common Fare
meals are nutritionally adequate and that they are prepared under
safe conditions.  The plaintiff chooses not to eat the Common Fare
meals.  He has not been denied the meals by the defendants.  While
the plaintiff's allegations regarding preparation of the meals and
compliance with Jewish dietary law are relevant to concerns under the
First Amendment and RLUIPA, concerns that were addressed above, the

allegations do not suggest that the meals were not nutritionally adequate or were dangerous to the plaintiff's health.  The court notes that the plaintiff has specifically stated that he does not raise any health concerns related to his alleged soy allergy in this action.  See Pl.'s Mem., Doc. #102 at 2-3. Thus, the plaintiff fails to present any evidence to support an Eighth Amendment claim.  See Jones, 2015 WL 5750136, at *2 (denial of hot, low sodium kosher meals does not violate Eighth Amendment); see also Modlenaar v. Liberatore, No. 07-CV06012 CJS, 2009 WL 2179661, at *5 (W.D.N.Y. July 22, 2009) (denial of kosher food for six days does not violate the Eighth Amendment)(citing cases).

    E.   Motion for Preliminary Injunction

The plaintiff asks the court to order the Department of Correction to serve him a modified cold diet that "conforms to orthodox standards of the Jewish faith." Doc. #91 at 1.  As all requests for damages have been dismissed, the relief requested in this motion mirrors the relief requested in the amended complaint.

The plaintiff relies on the materials submitted in opposition to the defendants' motion for summary judgment to support his position that Common Fare meals fail to comply with Jewish dietary law.  He states that he has survived by purchasing kosher foods from the commissary but that he received a disciplinary sanction on June 12,

2015, denying him commissary access.  The plaintiff filed this motion three months after the sanction was imposed.

The defendants oppose the motion on the grounds that the Common Fare meals conform to Jewish dietary law.  They rely on the affidavits and other evidence submitted in support of their motion for summary judgment.  In addition, the defendants noted that the Department of Correction provides about 50,000 meals per day.  If every inmate were permitted an individual diet based on his religious preferences, the Department of Correction's food service program would be overburdened and become unreliable.  It would be impossible to provide so many individualized meals without encountering shortages of various items and mix-ups in meal delivery.

To obtain a mandatory injunction, i.e., an injunction that changes the status quo by ordering the defendants to perform a positive act, the plaintiff must demonstrate "a substantial likelihood of success on the merits."  New York Progress and Protection PAC v. Walsh, 733 F.3d 483, 386 (2d Cir. 2013).  The court has granted the defendants' motion for summary judgment.  Thus, the plaintiff has not prevailed in this action.  His motion is, therefore, denied.

IV.  <u>Conclusion</u>

The defendants' motion for summary judgment [**Doc. #72**] is

**GRANTED**.  The plaintiff's motion for preliminary injunction [**Doc.**

**#91**] is **DENIED**.

The Clerk is directed to enter judgment in favor of the

defendants and close this case.

It is so ordered.

Signed this 21st day of March, 2016 at Hartford, Connecticut.


                            /s/AWT
                     Alvin W. Thompson
                 United States District Judge